**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ROGER ALLEN,

Plaintiff,

v.

CO PAUL NTOSI, CO ADELAJA and WARDEN,

Defendants.

Civil Action No.: ABA-25-0793

**MEMORANDUM OPINION**

Plaintiff Roger Allen, who is currently incarcerated at Jessup Correctional Institution ("JCI"), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Correctional Officer ("CO") Paul Ntosi, CO Musbau Adelaja, and Warden Damean Stewart.[1] ECF No. 1.[2] Allen alleges that Ntosi and Adelaja subjected him to excessive force and unconstitutional conditions of confinement. He seeks monetary damages. Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF Nos. 24 and 30. Allen opposes the Motion (ECF Nos. 37 and 39) and Defendants replied (ECF No. 47).[3] For the following reasons, Defendants' Motion will be granted.

## I. BACKGROUND

### A. Complaint Allegations

Allen alleges that on December 28, 2024, CO Ntosi was distributing breakfast trays but refused to give Allen and his cellmate their meals, giving them only milk. ECF No. 1 at 2; ECF

---

[1] The Clerk will be directed to amend the docket to reflect Defendants' full names.
[2] Citations to page numbers in ECF filings refer to the page numbers assigned by the Court's CM/ECF system, which may differ from the pagination used by the parties.
[3] Defendants move to seal the medical records attached to their reply as Exhibit 1. ECF Nos. 48 and 49. Having read and considered the motion, the Court will grant the motion to seal.

No. 1-1 at 1. Allen complained to Ntosi and CO Adelaja that they could not use food as a punishment, ECF No. 1 at 2, and he asked them to search his cell to confirm that no trays were delivered. ECF No. 1-1 at 1. Allen asserts that Adelaja gave his cellmate another inmate's tray, but neither Allen nor his cellmate received their own designated trays. *Id.* At the end of distribution, Allen pointed out that the extra trays were likely theirs. *Id.*

Allen states that he asked for grievance forms, prompting Ntosi to yell from across the tier that "he could do what he wants." ECF No. 1 at 2. According to Allen, Ntosi then charged toward his cell and began pepper spraying him until the can was empty. ECF No. 1-1 at 1. Allen alleges that he tried to block Ntosi from spraying through the food slot but that Ntosi and/or Adelaja smashed his hands with the can while he was trying to do so. *Id.* Allen's verified opposition provides a similar account. ECF No. 39.[4] He further avers that he and his cellmate were left in the contaminated cell for at least 30 minutes. *Id.* at 3. Allen claims to have suffered injuries to his hand from the pepper spray can, and claims that it took over an hour for his blood pressure to return to a normal level. ECF No. 39 at 6. Allen alleges that this was the second time Ntosi had assaulted him since December 17, 2024. ECF No. 1-1 at 2.

Allen filed a Request for Administrative Remedy ("ARP") on January 2, 2025, which was assigned No. JCI-0029-25. ECF No. 1-1. The ARP is stamped as dismissed for procedural reasons, explaining that Allen could not seek relief regarding disciplinary proceedings through the ARP grievance process. *Id.* at 1; ECF No. 37-1 at 1-2.

[4] Allen's opposition includes several allegations that were not raised in the Complaint concerning the food provided to him, the prison's disciplinary process, access to religious materials, and his placement in segregated housing. The Court will not address these allegations because his opposition is not the appropriate means in which to amend his pleadings. *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 692 (D. Md. 2017) (stating it is axiomatic that a plaintiff may not use their memorandum in opposition to amend the complaint).

**B. Defendants' Response**

Defendants move to dismiss the complaint under Rule 12(b)(6) and, in the alternative, have requested summary judgment under Rule 56. In support of their argument for summary judgment, Defendants submit surveillance video, a Use of Force Report, as well as disciplinary hearing and medical records. ECF Nos. 24-2 through 24-4. CO Adelaja states in a Use of Force Report that on December 28, 2024, he was assigned to the JCI B-Building as an escort officer on the B-Wing. ECF No. 24-3 at 22. When Adelaja asked Ntosi about the complaint, Ntosi responded that he had given them their trays. *Id*. At the end of distribution, Ntosi and Adelaja approached Allen's cell, at which point Adelaja describes Allen as aggressive, combative, and refusing direct orders. *Id.* Ntosi reports that Allen called him names, and when Ntosi responded that he had already given Allen a tray, Allen threw an unknown object at him. *Id.* at 7. Adelaja reports that Allen reached through the food slot and grabbed Ntosi's radio and "fogger." *Id.* at 22. The Use of Force Report states that Allen grabbed Ntosi's radio, that Ntosi attempted to deploy the pepper spray fogger in response, and that Allen seized the fogger, which broke in the struggle. *Id.* at 13. The pepper spray spilled onto Ntosi, Adelaja, Allen, and Allen's cellmate. *Id.* Ntosi and Adelaja exited the tier. Shortly thereafter, Sergeant Greene entered and was able to recover Ntosi's radio from Allen before both inmates were escorted to medical for evaluation. *Id.* Allen was seen by RN Chioma Anokam where, according to the nurse's note, he reported having a headache and was given Tylenol. ECF No. 27 at 19-20.

The surveillance footage submitted by Defendants shows the meal distribution. The camera angle is from the opposite end of the tier from Allen's cell, BB611, and does not clearly depict the entire encounter because Adelaja is standing in a location that partially blocks the view of the cell

during the time of the interaction.[5] The Court also notes that the file name superimposed over the video also impedes the scene. Nonetheless, the surveillance video does show the interaction between the officers and Allen. ECF No. 24-2 at 36:50–37:07. The footage shows that Ntosi pulled out his pepper spray and began to spray it through the food slot. *Id*. at 37:05. Almost immediately thereafter, something happened to the pepper spray bottle that resulted in its contents exploding, including toward Ntosi's face, leading Ntosi to immediately exit the scene with assistance from Adelaja. Moreover, in his opposition, Allen concedes that Ntosi's radio ended up in his cell, although he attests that it was not his intention to grab it and that a cord wrapped around his hand as he was trying to ward off Ntosi's attack, which caused it to enter his cell. ECF No. 39 at 5.

Allen was issued a Notice of Inmate Rule Violation for violation of Rules 116, 101, 316, 100, and 308; he pled not guilty to all charges. ECF No. 24-4 at 5. After a hearing, he was found guilty of violating Rules 116, 308, and 316. *Id.* at 6. Allen was sanctioned with 120 days' segregation, loss of visitation privileges for 45 days, and restitution for the broken fogger. *Id.* at 7.

## II. STANDARD OF REVIEW

Defendants move to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in their favor under Rule 56. Such motions implicate the Court's discretion under Rule 12(d). *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). But deciding whether to adjudicate a motion for summary

[5] Litigation Coordinator Eric Nichols attests that Allen viewed the video exhibit on November 18, 2025. ECF No. 31-1 ¶ 3.

judgment at the pleadings stage—*i.e.*, before the parties have conducted discovery—first requires the Court to decide whether the non-movant "cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Summary judgment is premature when, for example, "the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery, and when fact-intensive issues . . . are involved." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (citations omitted).

Allen was on notice that Defendants sought summary judgment in their favor, and he was given an opportunity to respond. ECF No. 29. Pursuant to the Order issued August 28, 2026, Allen's filings received January 23, and February 11, 2026 (ECF Nos. 37 and 39) have been construed as his opposition. ECF No. 43. Allen does not claim in either filing that summary judgment is premature. Allen previously sought additional time to obtain discovery, ECF No. 34, and later discussed materials he had requested from prison officials, ECF No. 41. He subsequently stated, however, that he did not need a further extension. *Id*. at 5. Therefore, in the instances in which the Court considers evidence submitted outside the pleadings, the Court will assess Allen's claims under the summary judgment standard. *See, e.g.*, *Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005). Otherwise, the Court assesses his claims under the Rule 12(b)(6) standard.

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Upon review of a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all well-pleaded allegations in the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the

plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [their] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

The Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [their] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e) (2003)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249–50.

## III. DISCUSSION

Defendants seek dismissal of the Complaint or summary judgment in their favor. They argue they are entitled to Eleventh Amendment immunity, Allen fails to state a claim against Warden Stewart, Allen fails to state an excessive force claim, there is no valid claim for food deprivation, and Defendants are entitled to qualified immunity. ECF No. 30-1 at 10–19.

### A. Eleventh Amendment Immunity

Although Allen does not specify in what capacity he sues Defendants, to the extent he sues them in their official capacities, his suit cannot proceed. The Eleventh Amendment to the Constitution immunizes state agencies and departments from citizen suits for damages in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Defendants are all Maryland state employees. Suits against agents of the state for acts taken in their official capacities are equivalent to suing the state itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, to the extent Allen's pleadings could be construed to raise claims against Defendants in their official capacities, those claims are barred by the Eleventh Amendment, *see Pennhurst*, 465 U.S. at 100–01, and will be dismissed. Claims against Defendants in their individual capacities are not barred by Eleventh Amendment immunity. *Gibbons v. Gibbs*, 99 F.4th 211, 215 (4th Cir. 2024) ("Neither the Eleventh Amendment nor the broader doctrine of state sovereign immunity it reflects forbids suits to impose individual and personal liability on state officials under § 1983.") (internal citations and quotations omitted).

### B. Warden Stewart

Defendants seek dismissal of the Complaint against Warden Stewart because Allen has not alleged that he personally engaged in any wrongdoing. ECF No. 30-1 at 11-12. Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation.

*Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Stewart is named in the caption of the Complaint in his capacity as Warden, but he is not otherwise mentioned in the factual allegations. Therefore, he is entitled to dismissal, to which Allen consents. *See* ECF No. 42 at 2.

**C. Correctional Officers Ntosi and Adelaja**

As explained above, Allen contends that Defendants Ntosi and Adelaja violated his constitutional rights because on December 28, 2024, (a) they used excessive force by allegedly discharging pepper spray into his cell and injuring his hand during that altercation, and (b) did not deliver a breakfast tray to him that morning. The Court will assess the first claim under the Rule 56 summary judgment standard because the Court relies on evidence submitted outside of the pleadings. It need not do so to resolve the second claim and therefore it will be assessed under the Rule 12(b)(6) standard.

**a. Excessive Force**

"The Eighth Amendment 'protects inmates from inhumane treatment and conditions while imprisoned.'" *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014) (per curiam) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). In cases involving excessive force, the Court must determine: (1) "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," which is the subjective component, *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 98 (4th Cir. 2017) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)); and (2) "whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious," which is the objective component, *Boone*, 583 F. App'x at 176 (quoting *Williams*, 77 F.3d at 761).

Regarding the "subjective" prong, to determine whether Ntosi and Adelaja acted maliciously or sadistically to cause Allen harm, this Court must consider "(1) the need for the

application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). The extent of injury incurred may be indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38–39.

As to the objective component, the bar to demonstrate a sufficiently serious injury is not a high one, requiring only something more than "de minimis" force. *Hudson*, 503 U.S. at 10; *see also Wilkins*, 559 U.S. at 39 (holding that "nontrivial" force is sufficient for an Eighth Amendment excessive force claim). Although courts once considered the severity of a plaintiff's injuries, "the Supreme Court has clarified that what matters is the severity of the *force* employed." *Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021) (emphasis in original). Thus, as long as more than de minimis force is used, the extent of the injury is not determinative. *See id.* at 303. "The objective component measures the nature of the force employed, asking whether that force 'was sufficiently serious to establish a cause of action.'" *Escobar-Salmeron v. Moyer*, 150 F.4th 360, 372 (4th Cir. 2025) (quoting *Dean*, 984 F.3d at 302, and *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019)).

Here, Allen states that the force used against him was excess pepper spray and the use of the pepper spray canister to "slam[] [his] hand against the food slot." ECF No. 39 at 2. "The use of pepper spray is not per se a cruel and unusual punishment" and "is reasonable when an officer is attempting to maintain order and discipline in [an] institution." *Kitchen v. Ickes*, 116 F. Supp.

3d 613, 626–27 (D. Md. 2015), *aff'd*, 644 F. App'x 243 (4th Cir. 2016) (citations and quotations omitted). The Fourth Circuit has previously held that a sustained use of pepper spray to an individual's face is more than de minimis force. *See Dean*, 984 F.3d at 303, 305 (holding that "sustained" spray while the inmate was "lying on his back in handcuffs" was sufficient to make out an excessive force claim); *see also Greene v. Feaster*, 733 F. App'x 80, 81–82 (4th Cir. 2018) (holding that dispersing pepper spray for "two to three seconds" was sufficient to make out an excessive force claim). Here, the Court assumes without deciding that there is a genuine dispute of material fact under the objective component of the inquiry with respect to the use of pepper spray. But the record does not support the finding that Ntosi used the can to smash Allen's hands. The surveillance video shows that approximately six seconds pass between the time Ntosi approaches Allen's cell to the time he and Adelaja exit the tier, with Ntosi apparently covered in pepper spray. ECF No. 24-2 at 37:00–37:06. The video shows Allen pulling his arm fully inside the cell before Ntosi directs the canister toward the food slot. *Id.* No reasonable jury could find that Ntosi did or had the opportunity to smash Allen's hands during this short period. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

The remaining question is whether a reasonable factfinder could conclude that Ntosi's use of pepper spray violated the subjective prong of the excessive force inquiry. The parties dispute some aspects of the altercation related to Ntosi's discharge of the pepper spray. Allen avers that Ntosi emptied the entire pepper spray can in response to his request for a grievance form. ECF No. 39 at 2 (contending that Ntosi "withdrew his Extinguisher sized mace can and charged across the tier spraying [m]e directly in the face" and "[a]s I tried to block the assault . . . [Ntosi] did <u>not</u> stop

at spraying me once"). Defendants describe the pepper spray as having been spilled during an altercation during which "Allen reached for Officer Ntosi's radio and grabbed it from him" after which Ntosi "attempted to use his fogger to disperse it, but Roger Allen seized the fogger from him," and during the "struggle, the canister of the fogger broke, releasing its contents on to Officer Ntosi's uniform, as well as on to Officer Adelaja, [Mr.] Allen, and [Allen's cellmate]." ECF No. 24-3 at 13 (Use of Force Report). However, Allen's allegations suggesting that Ntosi intentionally discharged a sustained spray ("[Ntosi] did <u>not</u> stop at spraying me once"), and that the reason for the discharge was a request for a grievance form, are belied not only by Allen's admission that Ntosi's radio ended up in his cell, but also by the video evidence, which shows that the entire physical altercation lasted less than two seconds, during which the pepper spray can exploded into a cloud of visible mist. ECF No. 24-2 at 37:04–37:06. Allen may have been exposed to a portion of the spray when the can unexpectedly exploded, but nothing suggests that either Defendant intended for this to happen; they too were covered in pepper spray as a result.

Particularly because it is also undisputed that Allen reached out through the food slot toward the officers as they were standing just outside the cell, that he reached out as Adelaja was trying to close the food slot, and that the physical altercation resulted in Ntosi's radio ending up inside Allen's cell, *see* ECF No. 39 at 2, 5, no reasonable jury could conclude that Ntosi "acted with a sufficiently culpable state of mind" when he discharged the pepper spray. *See Iko*, 535 F.3d at 238. Instead, the undisputed evidence establishes that Allen's arm preventing the food slot from closing and his possession of an officer's radio posed a potential security risk and a need to restore order to the tier, and that the bursting of the pepper spray canister was an accidental occurrence during the altercation. *See Shiheed v. Harding*, 802 F. App'x 765, 768 (4th Cir. 2020) (per curiam)

(finding that preventing an officer from closing the slot in his cell door posed a potential threat to security).

For these reasons, the undisputed evidence establishes that Defendants' actions were not intended to maliciously harm Allen and therefore Defendants are entitled to summary judgment.

**b. Failure to Provide Breakfast Tray**

Defendants assert that Allen's allegation of missing a single breakfast tray is insufficient to establish deliberate indifference or, alternatively, that they are entitled to qualified immunity. ECF No. 30. While this claim is also governed by the Eighth Amendment, the Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson*, 878 F.3d at 97 (quoting *Whitley*, 475 U.S. at 319–20). In general, the deliberate indifference standard applies to cases alleging a failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failing to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97.

Generally, conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). But conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id.* "In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). "These requirements spring from the text of the amendment itself;

absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko*, 535 F.3d at 238 (citing *Wilson*, 501 U.S. at 298–300).

"Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an extreme deprivation proscribed by the Eighth Amendment, a prisoner must allege "a serious or significant physical or emotional injury resulting from the challenged conditions . . . or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Id.* (quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993) and citing *Helling v. McKinney*, 509 U.S. 25, 33–35 (1993)); *see also Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Farmer*, 511 U.S. at 83; *Wilson*, 501 U.S. at 298–99. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N. Carolina Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

Regardless of whether Ntosi and Adelaja acted with malicious intent with respect to the breakfast tray, Allen has not alleged a sufficiently serious deprivation to satisfy the objective element of his claims. In *Farmer*, the Supreme Court recognized that the Eighth Amendment imposes a duty on prison officials to provide inmates with "adequate food." 511 U.S. at 832. Here, Allen raises a single, isolated instance in which he was allegedly denied breakfast. Regardless of whether the alleged deprivation was intentional or not, a single failure to provide a meal does not

amount to a deprivation of basic nutritional needs. Furthermore, Allen does not make any claim to have suffered any injury as a result of the missed breakfast tray. The claim must be dismissed.

## IV. CONCLUSION

For these reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 24) will be granted. Summary judgment will be entered in favor of Defendants Ntosi and Adelaja on Allen's Eighth Amendment excessive force claim. The Complaint is otherwise dismissed as stated herein.

A separate Order follows.

Date: September 28, 2026

/s/
Adam B. Abelson
United States District Judge